We'll go on to the very last case of today, 213379 United States v. Travis Beechler. Hello. Good morning, or good afternoon, I'm sorry. Good afternoon, Mr. Minch. Anytime you're ready. Okay, thank you very much. May it please the court, Theodore Day Minch on behalf of Appellant Travis Lee Beechler. First of all, I want to express my appreciation to the panel for allowing me to participate by Zoom and allowed me to take care of a matter in the Southern District of Indiana this morning. You're welcome. Thank you. Very much. Go ahead. Very much appreciated. So, I would like to focus on behalf of Mr. Beechler today on the motion to suppress that was filed in the district court. Essentially, Mr. Beechler sought a motion to suppress evidence and for all intents and purposes, the evidence that was obtained through what Mr. Beechler believes was an unreasonable search. Mr. Minch, how do you get around the very, very broad consent that your client signed as part of his home detention agreement? Where he waived his rights under the Fourth Amendment regarding search and seizure and agreed to permit law enforcement, MCC staff, or others to come into his home to search without any link to anything. Yes, Your Honor, it's a very, very difficult uphill battle. I do agree. And I know that the government had characterized our argument as a stalking horse type argument, which I do understand is disfavored. And we do not disagree. However, we believe that in this instance, the law enforcement function that was performed in searching Mr. Beechler's residence was so pervasive. And so, essentially, it was not even a search that was in conjunction with his community corrections supervision. It was a search that was essentially solely law enforcement based. That was our position and our argument in trial court. We do understand that Mr. Beechler's agreement under the community corrections supervision did have that provision, which Your Honor cited, that he waived any reasonableness arguments as to law enforcement searches. However, we believe that provision is overly broad and is contrary to the law as it stands, especially where, as in this case, the search was almost entirely law enforcement based. Isn't the very idea behind these home detention searches to allow the Department of Corrections to make sure that there's no criminal activity occurring at a place of home confinement? And isn't that exactly what they were doing here? Your Honor, we respectfully disagree on both contentions or both thoughts. First, we don't believe that given the circumstances of the search that the community corrections function was being fulfilled at all in this case. We believe that this was as we believe the evidence showed at trial and in the briefing on the motion to suppress that this was a wholly a law enforcement function. And for those reasons, we believed in, as we argued, we believe that law enforcement should have been required to obtain a search warrant for Mr. Beechler's residence. Even though he made a blanket waiver, a blanket waiver of his Fourth Amendment rights. Yes, it is. It is a blanket waiver. There's no doubt about that. There's no getting around it. I think as I, as we look back through the evidence, the blanket waiver was even initialed by Mr. Beechler. So obviously would be difficult, very difficult, extraordinarily difficult for us to argue that Mr. Beechler somehow didn't understand his rights. However, our argument is, is that that blanket waiver, because it involved a law enforcement waiver in addition to a waiver as to community corrections, parole, or even probation searches. That waiver was invalid because again, we have no quarrel with community corrections being allowed to come into one's residence. And if they're performing a community corrections function, which is what I think your honor was asking. How do we tell the difference? How do we tell the difference between, under your theory, between a permissible search under the waiver and an impermissible search? That's a fantastic question, your honor. And I'm happy you brought that up. It's extraordinarily difficult, especially in circumstances where, and that wasn't the circumstance here, I want to be clear. Especially in circumstances where you have community corrections individuals that are on scene when the initial search is conducted. It would be our argument that in this case where you had five or six law enforcement officers that made entry into the home absent any consent. And there was no evidence that at the time they made entry that community corrections folks were on scene or even were participating in the search. I wouldn't call that, and I want to be very careful not to overstate it, but it's not a bright line. But certainly we believe that the court could consider that in determining whether the search was actually a law enforcement search. Somebody tags along from probation, that would be sufficient or not? We believe it would in that case, your honor. Or we believe it would come closer to satisfying the line that I believe is there to prohibit unreasonable law enforcement searches. So I guess that really is the crux of our argument is we believe, and Mr. Beachler argues, that this was an unreasonable law enforcement search. Not a community corrections generated search. Do you see any indications in the Knights or Samson or Price decisions supporting that distinction that you're trying to draw between permissible and impermissible searches of somebody under supervision? Your honor, ironically, I just reviewed as I as I was in the waiting room again to refresh my recollection of the night's decision, because I believe that's really the touchstone in this area. And I don't have the specific page site for your honor, but I would happy to be happy to supplement my argument with that. I do believe that in the night's opinion, it's contemplated and it's discussed that there's the stalking horse theory, which, as the government pointed out again, and as I had previously argued is disfavored. That there was some notation or some discussion is my recollection about whether about law enforcement and I believe in that case, parole or probation officers being on scene as the search was being conducted. And in this case, community corrections officers arrived much later. There was even evidence that a locked room or at least a room that was closed that was not attributed to Mr. Beachler was was breached during the law enforcement search prior to any warrant being obtained in this case. If that happened, I this is my one of my additional puzzles about this this case. And that is why is everybody so focused on Beachler's waiver of Fourth Amendment rights when he's in his girlfriend's home where he's not supposed to be living and she provided a similar waiver. I would have thought that we would be primarily focused on the extent to which the search might or might not have violated her rights under the Fourth Amendment. Thank you, Your Honor, and I appreciate your bringing that to light. I, you know, I'll be frank with the panel here. That's not a consideration that I had thought about prior to your honor bringing that up only because if Miss Turner's rights were violated, it would be, I guess, in in in my thought process. I'm not sure that Mr. Beachler could assert rights that may belong to Miss Turner. So, she, she happens to be yet another parolee, right? Well, she just to be clear, Your Honor, she was on supervision, but not parole supervision. She was also on community corrections supervision, and I don't mean to split hairs, but it's, it's, it's obviously seems to be characterized as the same in terms of how the search was conducted or who conducted the search. But yes, she was on community corrections supervision. And, and again, I believe the government uses that example as another justification for the search. That is that there was this notion that Mr. Beachler had agreed that he cannot reside with others that were under supervision. And there was some evidence that the community corrections folks had compared the, the addresses where Mr. Beachler and Mr. Miss Turner had reported to to be residing. But again, we would fall, fall back to our argument that or go back to our argument that that that wasn't the type of search that was being conducted. In this case, it was, it was wholly a law enforcement function. What's your best case that supports that idea that law enforcement cannot use a home confinement Fourth Amendment waiver in order to search for evidence of criminal activity for law enforcement purposes? Your Honor, we would cite actually to Knights and his progeny. We believe that as Judge Hamilton had pointed out, were there instances in Knights that, that where it was discussed that law enforcement could be a law and exclusively law enforcement search? Could that be prohibited despite the fact that someone has signed away their rights against unreasonable search and seizure where it involves a community community correction search? It is not that you are. That's correct. Thank you, Your Honor. I had not intended to touch on Mr. Beachler sentencing arguments today. So, I really wanted to focus my argument on the unreasonable search and seizure. So, for those reasons, we would reserve the rest of our time and rebuttal and we appreciate it. Thank you. And thank you very much. Mr. Gibson. Thank you, Your Honors. May it please the court. Patrick Gibson for the United States. Touching upon the search and seizure issue in this matter, what it comes down to and its totality is reasonableness and applying the test of the court in price. The search of this home was the only reasonable decision by Marion County Community Corrections in this matter. Contrary to defense counsel, I believe the record is clear that Marion County Community Corrections staff were at the home along with other law enforcement officers, which is standard procedure for safety. Following the initial search, a search warrant was later obtained and the rest of the evidence was found at the home. Do you see any scenario under which law enforcement couldn't perform a search of Beachler's resident, resident, well, of that residence? Yeah. Yes, Your Honor. There certainly could be a situation in which it was not reasonable. That's depends on the facts. So, for example, if Community Corrections had conducted a search the day before, this person is in full compliance. There's no indication that they're in violation of Community Corrections at all. And law enforcement conducts a search the next day. That certainly would not appear to be reasonable. But you have to turn to all the facts and the Community Corrections documents to shape this determination of reasonableness. And so in this specific situation, Community Corrections had all sorts of information that this defendant, Mr. Beachler, was in noncompliance with his Community Corrections. The fact that he was seen outside of this home, going into the home which was not the home that he had listed, was suspected of maybe being involved in drug trafficking. And so that raises great concern to Community Corrections and increases the government interest in this search. So applying the price standard, certainly there are situations where it could be unreasonable, but it's our position that it's not the case in this matter. I would like to turn briefly to the sentencing issues as there are some areas that need further explanation for the court. So the career offender determination was for two battery convictions. One was the battery conviction when Mr. Beachler was 17 that was properly waived into adult court. And the second conviction was another battery conviction that did occur after he became an adult. And so that qualifies him as career offender. And that's important and relevant when looking at the further sentencing enhancements as well. Because the base level offense for the drug offense was 34, originally with a criminal history category of 5. So with the four points added, that makes him 38 in criminal history category 6 with a guideline of 360 months to life for count 1 and count 2 is grouped with count 1. So even if there was error in applying the stash house enhancement or the leader or manager enhancement, the career offender would have made his offense level still 37 with a criminal history category of 6, which would still have resulted in him having a guideline of 360 to life. So even if there was any error in finding those enhancements, we certainly believe that it was harmless, given that he still would be designated a career offender and would still have that certain guideline range. Didn't the court here also say it would have given the same sentence even if it was wrong on the enhancements? Yes, Your Honor. To paraphrase, I believe the court said that it had presided over the trial and had heard all of the evidence of the trial, including the firearms evidence, and would have imposed the same sentence as well. So that is in the transcript as well. And we certainly do believe that the sentence in this matter was reasonable, as it was 60 months below the minimum guideline sentence in this matter for counts 1 and 2, which are grouped together. So looking at all of the evidence together, the only determination that can be found in the search and seizure issue is that it was totally reasonable for this search to be conducted at that home. Just briefly touching on Ms. Turner's status, that actually lowers Mr. Bieter's expectation of privacy as well. And I apologize, the other community corrections offender. So being that there are two community corrections individuals living at the same home, Mr. Bieter then would know that that can be searched by his officer or even another officer for something that's totally unrelated to him and further lessens his expectation of privacy. And if there are no further questions at this time, the United States would respectfully ask that the court affirms. Thank you. Thank you. Mr. Minch. Thank you, Your Honor. I did want to address just very briefly one matter that Mr. Gibson had brought up, and Mr. Gibson was entirely correct. And my apologies to the court. I didn't want to leave the court with the impression I intentionally misstated the record. I did go back during Mr. Gibson's argument, and it is the joys of being able to participate electronically, I guess, that I have the transcripts available to me. But it is clear that from the trial testimony, and I did represent Mr. Biesler at trial in this case, that Jill Jones, who was the community corrections officer responsible for Marion County Community Corrections, did accompany officers at the search, and that can be found on the transcripts, day one, trial testimony, page 15. So I want to make sure the court was aware of that and that I was not misstating the record intentionally. Even so, we would rely on our arguments that this was a law enforcement search that was unreasonable given the circumstances. And for those reasons, the evidence that was obtained during that search should be suppressed under Fourth Amendment principles. And with that, we would stand on our briefing. Thank you very much. Mr. Minch, you were appointed by our court to take the appeal, and we really would like to thank you for trying so hard for your client. Thank you. Well, thank you, Your Honor, and I represented Mr. Biesler as appointed counsel at trial as well, and I wanted to fight hard for Mr. Biesler because I quite liked him as I was able to meet him during the process. And, of course, we want to thank Mr. Gibson and the government for the job that he does for the government. And with that, we want to wish everyone a good day and take care of yourselves. And this court will now be in recess until tomorrow morning at 930. Thank you. Thank you.